**[Cite as *In re J.F.*, 2020-Ohio-3085.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:

    **J.F.,**

**[JOYOUS F. - APPELLANT]**

**CASE NO. 9-19-67**

**O P I N I O N**

IN RE:

    **M.A.,**

**[JOYOUS F. - APPELLANT]**

**CASE NO. 9-19-68**

**O P I N I O N**

IN RE:

    **J.M., (1),**

**[JOYOUS F. - APPELLANT]**

**CASE NO. 9-19-69**

**O P I N I O N**

IN RE:

    **T.M., II,**

**[JOYOUS F. - APPELLANT]**

**CASE NO. 9-19-70**

**O P I N I O N**

IN RE:

    **J.M., (2),**

**[JOYOUS F. - APPELLANT]**

**CASE NO. 9-19-71**

**O P I N I O N**

**Appeals from Marion County Common Pleas Court
Family Division
Trial Court Nos. 17 AB 0242, 17 AB 0243, 17 AB 0244,
17 AB 0245, and 17 AB 0246**

**Judgments Reversed and Causes Remanded**

**Date of Decision: May 26, 2020**

**APPEARANCES:**

*Todd A. Workman* **for Appellant**

*Justin J. Kahle* **for Appellee**

**PRESTON, J.**

{¶1} Appellant, Joyous F. ("Joyous"), appeals the September 24, 2019 judgments of the Marion County Court of Common Pleas, Family Division awarding permanent custody of her children to Marion County Children Services (the "agency"). For the reasons that follow, we reverse.

{¶2} Joyous is the biological mother of J.F., born 2007, M.A., born 2010, J.M. 1, born 2012, T.M., born 2014, and J.M. 2, born 2015. Mason F. is the biological father of J.F. Randy M. is the biological father of M.A. Travis M. is the

biological father of J.M. 1, T.M., and J.M. 2. Mason F., Randy M., and Travis M. are not parties to this appeal.

{¶3} On October 19, 2017, the agency filed complaints alleging that J.F., J.M. 1, T.M., and J.M. 2 were dependent children. (Case No. 17 AB 0242, Doc. No. 2); (Case No. 17 AB 0244, Doc. No. 2); (Case No. 17 AB 0245, Doc. No. 2); (Case No. 17 AB 0246, Doc. No. 2). The agency also filed a complaint alleging that M.A. was an abused and dependent child. (Case No. 17 AB 0243, Doc. No. 2). That same day, the agency filed motions requesting that the trial court grant emergency temporary custody of the children to the agency. (Case No. 17 AB 0242, Doc. No. 1); (Case No. 17 AB 0243, Doc. No. 1); (Case No. 17 AB 0244, Doc. No. 1); (Case No. 17 AB 0245, Doc. No. 1); (Case No. 17 AB 0246, Doc. No. 1). The trial court granted the agency's motions for emergency temporary custody, and following a hearing on October 20, 2017, the trial court extended the agency's emergency temporary custody of the children pending a hearing on the agency's complaints. (Case No. 17 AB 0242, Doc. Nos. 4, 5); (Case No. 17 AB 0243, Doc. Nos. 4, 5); (Case No. 17 AB 0244, Doc. Nos. 4, 5); (Case No. 17 AB 0245, Doc. Nos. 4, 5); (Case No. 17 AB 0246, Doc. Nos. 4, 5).

{¶4} At a hearing on November 29, 2017, Joyous agreed to stipulate to a finding of dependency with respect to all five of her children. (Case No. 17 AB 0242, Doc. No. 12); (Case No. 17 AB 0243, Doc. No. 15); (Case No. 17 AB 0244,

Case No. 9-19-67, 68, 69, 70, 71

Doc. No. 12); (Case No. 17 AB 0245, Doc. No. 12); (Case No. 17 AB 0246, Doc. No. 11). Consequently, the magistrate recommended that J.F., M.A., J.M. 1, T.M., and J.M. 2 be adjudicated dependent as to Joyous. (*Id.*); (*Id.*); (*Id.*); (*Id.*); (*Id.*). The magistrate also recommended dismissal of the allegation that M.A. was an abused child. (*Id.*); (*Id.*); (*Id.*); (*Id.*); (*Id.*). After a combined adjudicatory and dispositional hearing on January 11, 2018, the magistrate again recommended that J.F., M.A., J.M. 1, T.M., and J.M. 2 be adjudicated dependent, and he recommended that the agency receive temporary custody of J.F., M.A., J.M. 1, T.M., and J.M. 2. (Case No. 17 AB 0242, Doc. No. 14); (Case No. 17 AB 0243, Doc. No. 17); (Case No. 17 AB 0244, Doc. No. 14); (Case No. 17 AB 0245, Doc. No. 14); (Case No. 17 AB 0246, Doc. No. 13). On January 23, 2018, the trial court adopted both of the magistrate's recommendations. (Case No. 17 AB 0242, Doc. Nos. 13, 15); (Case No. 17 AB 0243, Doc. Nos. 16, 18); (Case No. 17 AB 0244, Doc. Nos. 13, 15); (Case No. 17 AB 0245, Doc. Nos. 13, 15); (Case No. 17 AB 0246, Doc. Nos. 12, 14). However, the magistrate's recommendations and the trial court's judgments adopting the magistrate's recommendations were not filed until March 8, 2018. (Case No. 17 AB 0242, Doc. Nos. 12, 13, 14, 15); (Case No. 17 AB 0243, Doc. Nos. 15, 16, 17, 18); (Case No. 17 AB 0244, Doc. Nos. 12, 13, 14, 15); (Case No. 17 AB 0245, Doc. Nos. 12, 13, 14, 15); (Case No. 17 AB 0246, Doc. Nos. 11, 12, 13, 14).

-4-

Case No. 9-19-67, 68, 69, 70, 71

{¶5} On September 28, 2018, the agency filed motions requesting that a guardian ad litem ("GAL") be appointed for J.F., J.M. 1, T.M., and J.M. 2. (Case No. 17 AB 0242, Doc. No. 21); (Case No. 17 AB 0244, Doc. No. 23); (Case No. 17 AB 0245, Doc. No. 23); (Case No. 17 AB 0246, Doc. No. 22). On October 17, 2018, the trial court granted the agency's motions and appointed a GAL for J.F., J.M. 1, T.M., and J.M. 2.[1] (Case No. 17 AB 0242, Doc. No. 24); (Case No. 17 AB 0244, Doc. No. 26); (Case No. 17 AB 0245, Doc. No. 26); (Case No. 17 AB 0246, Doc. No. 25).

{¶6} On July 11, 2019, the agency filed motions for permanent custody of J.F., M.A., J.M. 1, T.M., and J.M. 2. (Case No. 17 AB 0242, Doc. No. 32); (Case No. 17 AB 0243, Doc. No. 34); (Case No. 17 AB 0244, Doc. No. 33); (Case No. 17 AB 0245, Doc. No. 33); (Case No. 17 AB 0246, Doc. No. 32). The first hearing on the agency's motions for permanent custody took place on August 8, 2019. (Aug. 8, 2019 Tr. at 1). The GAL filed her reports on August 27, 2019. (Case No. 17 AB 0242, Doc. No. 41); (Case No. 17 AB 0243, Doc. No. 43); (Case No. 17 AB 0244, Doc. No. 42); (Case No. 17 AB 0245, Doc. No. 42); (Case No. 17 AB 0246, Doc. No. 41). A second hearing on the agency's motions for permanent custody was held on September 3, 2019. (Sept. 3, 2019 Tr. at 1). On September 24, 2019, the trial

---

[1] A separate GAL had previously been appointed for M.A. on November 7, 2017. (Case No. 17 AB 0243, Doc. No. 11). By the time of the permanent custody hearing, the GAL originally appointed for M.A. had been replaced by the GAL appointed for J.F., J.M. 1, T.M., and J.M. 2. (Case No. 17 AB 0243, Doc. Nos. 23, 24).

court granted the agency's motions for permanent custody and awarded permanent custody of J.F., M.A., J.M. 1, T.M., and J.M. 2 to the agency. (Case No. 17 AB 0242, Doc. No. 43); (Case No. 17 AB 0243, Doc. No. 44); (Case No. 17 AB 0244, Doc. No. 43); (Case No. 17 AB 0245, Doc. No. 43); (Case No. 17 AB 0246, Doc. No. 42).

{¶7} On October 23, 2019, Joyous filed notices of appeal. (Case No. 17 AB 0242, Doc. No. 48); (Case No. 17 AB 0243, Doc. No. 49); (Case No. 17 AB 0244, Doc. No. 47); (Case No. 17 AB 0245, Doc. No. 47); (Case No. 17 AB 0246, Doc. No. 46). Joyous's appeals were subsequently consolidated for purposes of briefing and argument. She raises three assignments of error for our review. Because it is dispositive of Joyous's appeals, we begin with Joyous's third assignment of error.

### Assignment of Error No. III

**The decision of the Trial Court is not in the best interest of the children and the determination was against the manifest weight and sufficiency of the evidence.**

{¶8} In her third assignment of error, Joyous argues that clear and convincing evidence does not support that it is in the best interest of the children to grant permanent custody of the children to the agency.

{¶9} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625

(1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53 and 5-02-54, 2003-Ohio-1269, ¶ 6.

{¶10} "R.C. 2151.414 outlines the procedures that protect the interests of parents and children in a permanent custody proceeding." *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08 and 3-17-09, 2018-Ohio-125, ¶ 12, citing *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26. "When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414." *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 13, citing *In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. "R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child." *In re Y.W.*, 3d Dist. Allen No. 1-16-60, 2017-Ohio-4218, ¶

10, citing *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10 and *In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994).

{¶11} "'If the trial court determines that any provision enumerated in R.C. 2151.414(B)(1) applies,' it must proceed to the second prong of the test, which requires the trial court to 'determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest.'" *In re K.M.S.*, 3d Dist. Marion Nos. 9-15-37, 9-15-38 and 9-15-39, 2017-Ohio-142, ¶ 23, quoting *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 55 and citing R.C. 2151.414(B)(1). "The best interest determination is based on an analysis of R.C. 2151.414(D)." *Id.*

{¶12} "Under R.C. 2151.414(D)(1), the trial court is required to consider all relevant factors listed in that subdivision, as well as any other relevant factors." *Id.* at ¶ 24, citing *In re H.M.*, 3d Dist. Logan Nos. 8-13-11, 8-13-12 and 8-13-13, 2014-Ohio-755, ¶ 27. The R.C. 2151.414(D)(1) factors include:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1). This court has previously held that "in rendering its judgment, the trial court must either specifically address each of the required considerations set forth in R.C. 2151.414(D) in its judgment entry, or otherwise provide some affirmative indication in the record that the court has considered the specific factors listed in R.C. 2151.414(D)." *In re D.H.*, 3d Dist. Marion No. 9-06-57, 2007-Ohio-1762, ¶ 21.

{¶13} If the trial court makes these statutorily required determinations, a reviewing court will not reverse a trial court's decision unless it is not supported by

clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985) and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.*, 2015-Ohio-2306, at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶14} In granting the agency's motions for permanent custody, the trial court found and concluded, in relevant part, as follows:

The evidence at trial showed that [Joyous] has not been able to find stable housing for herself as well as the children.

[Joyous's] testimony revealed that she has stayed at approximately eighteen different homes or places during the course of this case. At the present time[,] [Joyous] is attempting to rehabilitate a house that is in poor condition.

The evidence also shows [Joyous] worked at Marion Industrial for two weeks but quit due to a blood clot. She found work at Goodwill but was fired due to being incarcerated. [Joyous] tried to secure a job at Honda but was unsuccessful. She worked at McDonalds briefly but

left there as well. She discontinued her job search efforts due to a felony conviction.

[Joyous] was directed to Marion Area Counseling Center to address her anger issues, PTSD and ADHD. The evidence indicates that minimal efforts were made by [Joyous].

[Joyous] was given the opportunity to visit with the children at the Agency. The initial visits were difficult. The children expressed their anger towards [Joyous]. She missed the last two visits and some were cancelled.

The children have been in foster homes since their removal. [T.M. and J.M. 2] have been in foster care since November 2017. After [M.A.] was treated for mental health issues. [sic] At the conclusion of her treatment[,] [M.A.] was placed in foster care with [T.M.] and [J.M. 2] on Memorial Day 2018.

The other two children, [J.F. and J.M. 1], were placed in another foster home as well.

The evidence shows the children have negative behaviors thought to be a result of the trauma they have suffered. The evidence also shows that the children continue to exhibit negative behaviors but the incidents are decreasing.

The Court finds by clear and convincing evidence that the Agency provided nearly two years of case planning and made diligent efforts to assist [Joyous] to remedy the problems that caused the children to be placed outside the home.

The Court further finds the parents failed continuously and repeatedly to substantially remedy the conditions that caused the children to remain in Agency custody.

* * *

[The GAL] recommends the children be placed in the custody of [the agency].

Pursuant to [R.C. 2151.414(E)(4)], the Court finds by clear and convincing evidence the parents demonstrated [a] lack of commitment to the children by failing to regularly support, visit or communicate with the children when able and offered the opportunity to do so.

The Court further finds pursuant to [R.C. 2151.419(A)(1)][2] that the Agency made reasonable efforts to prevent the removal of the children from their parents' home and had taken steps to make it possible for the children to be returned home safely.  However, the Court finds the

---

2 Though the trial court actually cited to R.C. 2151.414(A)(1) here, the trial court likely meant to refer to R.C. 2151.419(A)(1) because R.C. 2151.419(A)(1), rather than R.C. 2151.414(A)(1), deals with the agency's duty to make reasonable efforts to prevent the removal of a child from the child's home and to make it possible for the child to return safely home.

parents' failure to work with the Agency in achieving the goals and objectives of the case plan prevent return of the children to the parents' home. The Agency has made reasonable efforts to prevent the need for placement and reasonable efforts to finalize the children's permanency plan in accordance with [R.C. 2151.353(4)].

(Case No. 17 AB 0242, Doc. No. 43); (Case No. 17 AB 0243, Doc. No. 44); (Case No. 17 AB 0244, Doc. No. 43); (Case No. 17 AB 0245, Doc. No. 43); (Case No. 17 AB 0246, Doc. No. 42).

{¶15} After reviewing the trial court's judgment entries, we find that we cannot properly analyze whether clear and convincing evidence supports that it is in the children's best interest to grant permanent custody to the agency because the trial court failed to adequately address the best-interest factors enumerated in R.C. 2151.414(D)(1). First, the trial court does not specifically address the R.C. 2151.414(D)(1) factors in any of its judgment entries. Furthermore, the judgment entries do not otherwise affirmatively indicate that the trial court considered all of the factors listed in R.C. 2151.414(D)(1). The phrases "best interest" or "best interests" do not appear in any of the trial court's judgment entries. Likewise, the trial court does not state in any of its judgment entries that it decided to grant permanent custody of the children to the agency after considering the factors listed in R.C. 2151.414(D)(1). *See In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-

1302, ¶ 78 ("[T]he trial court's citation to [R.C. 2151.414(B) and (D)] when making its best interest finding meets its obligation, albeit to the minimum extent possible, in demonstrating that the R.C. 2151.414(D) factors were considered."). The judgment entries do not even contain a general statement that the trial court considered the factors in R.C. 2151.414 before deciding to grant the agency's motions for permanent custody. *See In re Haller*, 3d Dist. Wyandot No. 16-08-16, 2009-Ohio-545, ¶ 14-15 (concluding that the trial court's statement that it "'considered the factors set forth in Section 2151.414 of the Ohio Revised Code,'" coupled with its findings of fact, provided some affirmative indication that it properly considered the R.C. 2151.414(D)(1) factors). Certainly, the trial court's judgment entries contain some citations to R.C. 2151.414 and paraphrase parts of R.C. 2151.414. However, the only divisions of R.C. 2151.414 that the trial court cites to or paraphrases are R.C. 2151.414(E)(1) and (4)—neither of which the trial court is required to consider under R.C. 2151.414(D)(1)(e). Thus, the statutory references contained in the trial court's judgment entries do not clearly evince the trial court's consideration of the R.C. 2151.414(D)(1) factors.

{¶16} Finally, we recognize that many of the trial court's findings of fact are arguably relevant under several of the factors listed in R.C. 2151.414(D)(1) and that they could conceivably support a conclusion that the trial court considered the R.C. 2151.414(D)(1) factors but found that only some of them were applicable.

Nevertheless, without any type of statement that it considered the factors in R.C. 2151.414 generally or the factors in R.C. 2151.414(D)(1) specifically, the trial court's findings of fact are inadequate to show that it satisfied its obligation to consider every factor listed in R.C. 2151.414(D)(1) because the trial court's judgment entries do not contain findings of fact corresponding to all of the R.C. 2151.414(D)(1) factors.  For example, none of the trial court's findings of fact clearly demonstrates that the trial court considered whether any of the R.C. 2151.414(E)(7)-(11) factors apply in relation to Joyous and her children.  *See* R.C. 2151.414(D)(1)(e).  Although it is possible, and perhaps likely, that the trial court considered R.C. 2151.414(D)(1)(e), and the other R.C. 2151.414(D)(1) factors, before granting the agency's motions for permanent custody, "it is not sufficient for the trial court to simply rely on the appellate court to review the factual record or narrative and then make the necessary inferences to determine whether the trial court must have considered each of the required statutory factors." *In re D.H.*, 2007-Ohio-1762, at ¶ 20.

{¶17} Absent an affirmative indication that the trial court considered all of the best-interest factors listed in R.C. 2151.414(D)(1), we are unable to determine whether clear and convincing evidence supports that it is in the best interest of the children to grant permanent custody to the agency.  *See In re McMillin*, 171 Ohio App.3d 686, 2007-Ohio-2046, ¶ 17-18 (3d Dist.).  These cases must therefore be

remanded to the trial court to allow the trial court to appropriately address the best-interest factors enumerated in R.C. 2151.414(D)(1) and make findings of fact with respect to those factors. *See In re N.G.*, 1st Dist. Hamilton Nos. C-130684 and C-130685, 2014-Ohio-720, ¶ 12; *In re McMillin* at ¶ 19; *In re D.H.* at ¶ 23.

{¶18} Joyous's third assignment of error is sustained.

**Assignment of Error No. I**

**The Trial Court erred in finding that the Agency had made reasonable efforts to reunify the family as required under Ohio Law.**

**Assignment of Error No. II**

**The Trial Court erred when it determined that the children could not be returned in a timely manner.**

{¶19} In her first and second assignments of error, Joyous takes issue with the trial court's determinations that reasonable efforts were made to reunify her with her children and that her children cannot be placed with her within a reasonable time or should not be placed with her. However, given our disposition of Joyous's third assignment of error, Joyous's first and second assignments of error are rendered moot and we decline to address them. *See In re K.T. 1*, 1st Dist. Hamilton Nos. C-170667, C-170687, C-170701, C-170702 and C-170707, 2018-Ohio-1381, ¶ 16, citing App.R. 12(A)(1)(c).

{¶20} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgments of the trial court and remand for further proceedings consistent with this opinion.

*Judgments Reversed and*
*Causes Remanded*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**