OPINION
{¶ 1} Appellant, Chris Van Atta, appeals the January 21, 2005 judgment of the Court of Common Pleas, Hancock County, Ohio, granting permanent custody of her son, Andrew Van Atta, to the Hancock County Job and Family Services: Children's Protective Service Unit (CPSU).
 {¶ 2} Andrew Van Atta was born on April 19, 1994. He was adjudicated a neglected and dependent child on May 1, 2003. CPSU obtained protective supervision over him, and the trial court adopted a case plan with the following objectives: performing substance abuse and mental health assessments of Ms. Van Atta, increasing Ms. Van Atta's parenting skills and knowledge, and addressing Andrew's behavioral and school difficulties. To meet these objectives, Ms. Van Atta was required to receive mental health assessments and follow all recommendations made, and was required to attend parenting classes. She was also required to transport Andrew to and attend mental health counseling sessions. Andrew also received home instruction and speech therapy.
 {¶ 3} On October 21, 2003 Andrew was removed from the home by the Findlay Police Department after they received a call from Ms. Van Atta's home where she allegedly made homicidal and suicidal threats towards herself and Andrew. On October 22, 2003 the trial court issued an ex parte order that granted CPSU temporary custody, and the court reaffirmed the order subsequent to a hearing on October 30, 2003. The court adopted a new case plan, and Andrew was placed in foster care.
 {¶ 4} The new case plan listed several concerns, including Ms. Van Atta's failure to cooperate with the agency and with service providers. The case plan required her to continue mental health treatments, and required both her and Andrew to undergo psychological evaluations with an agency approved psychologist at an appointment made by CPSU. The case plan specified that Ms. Van Atta was required to attend all mental health sessions as well as the psychological exam at the specified day and time.
 {¶ 5} On September 13, 2004 the Hancock County Department of Jobs and Family Services filed a motion for permanent custody of Andrew. Following a hearing, the trial court granted the motion in its January 21, 2005 judgment entry, and terminated Ms. Van Atta's parental rights and responsibilities. She now appeals, asserting the following four assignments of error:
THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO HANCOCKCOUNTY JOB AND FAMILY SERVICES: CHILDREN'S PROTECTIVE SERVICESUNIT BECAUSE HANCOCK COUNTY JOB AND FAMILY SERVICES: CHILDREN'SPROTECTIVE SERVICES UNIT DID NOT DILIGENTLY PURSUE EFFORTS TOACHIEVE THE GOALS IN THE CASE PLAN.
 THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO HANCOCKCOUNTY JOB AND FAMILY SERVICES: CHILDREN'S PROTECTIVE SERVICESUNIT BECAUSE HANCOCK COUNTY JOB AND FAMILY SERVICES: CHILDREN'SPROTECTIVE SERVICES UNIT DID NOT SHOW BY CLEAR AND CONVINCINGEVIDENCE THAT THE CHILD COULD NOT BE PLACED WITH HIS MOTHERWITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH HER.
 THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO HANCOCKCOUNTY JOB AND FAMILY SERVICES: CHILDREN'S PROTECTIVE SERVICESUNIT BECAUSE HANCOCK COUNTY JOB AND FAMILY SERVICES: CHILDREN'SPROTECTIVE SERVICES UNIT DID NOT SHOW BY CLEAR AND CONVINCINGEVIDENCE THAT GRANTING PERMANENT CUSTODY WOULD BE IN THE CHILD'SBEST INTERESTS.
 THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO HANCOCKCOUNTY JOB AND FAMILY SERVICES: CHILDREN'S PROTECTIVE SERVICESUNIT BECAUSE HANCOCK COUNTY JOB AND FAMILY SERVICES: CHILDREN'SPROTECTIVE SERVICES UNIT DID NOT HAVE TEMPORARY CUSTODY OF THECHILD OR THE CHILD HAD NOT BEEN PLACED IN A PLANNED PERMANENTLIVING ARRANGEMENT THROUGH THE UNDERLYING CASE.
 {¶ 6} Our review of a grant of permanent custody begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes
(1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, citing In reMurray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. In re Hayes,supra (citations omitted); In re Murray, supra. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right[.]'"In re Murray, supra. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." Inre Hayes, supra (citations omitted). Thus, it is within these constructs that we now examine the assignments of error.
 I {¶ 7} In her first assignment of error, appellant asserts that CPSU failed to "diligently pursue" efforts to achieve the goals in the case plan. She argues that while CPSU required her to undergo a mental health assessment and to continue mental health treatments, the agency did not provide adequate services to meet her mental health needs.
 {¶ 8} We have previously held that child protective services agencies have "the ultimate duty to use diligent efforts to achieve the goal of family reunification." In the Matter ofEvans, Allen App. No. 1-01-75, 2001-Ohio-2302, 2001 WL 1333979, at *3. This goal is facilitated through the implementation of a case plan, which establishes the individualized goals and the steps needed to be taken by parents to accomplish reunification. Id. Thus, the agency bears the burden of establishing that reasonable, diligent efforts have been made to effectuate the goals of the case plan. Id.; see also In the Matter of Sorg,
Hancock App. No. 5-02-03, 2002-Ohio-2725, ¶ 13.
 {¶ 9} Ms. Van Atta asserts two rationales for her contention that CPSU failed to diligently pursue the goals stated in the case plan: (1) CPSU failed to properly diagnosis her mental health condition until approximately one year after her mental health assessment, and (2) CPSU failed to provide proper counseling. First, Ms. Van Atta argues that CPSU did not diligently pursue the goals of the case plan because the psychological evaluation which was required by the case plan did not take place for approximately one year. However, the record illustrates that Ms. Van Atta was mostly to blame for the delay in performing the psychological evaluations, due to her failure to attend appointments and her failure to cooperate with her caseworker in scheduling the psychological evaluation. The record shows that CPSU used diligent efforts to effectuate this objective, including scheduling a psychological evaluation with Dr. David Connell that Ms. Van Atta had to reschedule due to a conflict.
 {¶ 10} Second, Ms. Van Atta contends that CPSU did not provide for adequate mental health treatment because the service provider, Century Health, had her treating with Kathy Hilkert for six months, whom she alleges is a substance abuse counselor. Ms. Van Atta argues that this treatment was not adequate to meeting her mental health needs, because Ms. Hilkert was not familiar with dialectical behavior treatment, the treatment recommended by Dr. Connell. Additionally, she contends that her substance abuse assessment indicated that she did not need substance abuse treatment.
 {¶ 11} However, the record demonstrates that Ms. Hilkert, while a specialist in substance abuse treatment, is also a licensed social worker and provides treatment generally in the area of mental health. Ms. Van Atta's treatments with Ms. Hilkert occurred prior to the psychological evaluation she was required to undergo, and therefore her mental health needs had not been fully assessed at this point by Century Health. Once Dr. Connell had conducted the evaluation and diagnosed her with borderline personality disorder, he consulted doctors at Century Health to establish a treatment plan that would more adequately suit her needs. At that point, her sessions with Ms. Hilkert ceased, and she began treating with Terry Hinkley, who had over twenty years experience treating patients with borderline personality disorder and utilized dialectical behavioral therapy as part of his treatment.
 {¶ 12} Moreover, this argument does not demonstrate that CPSU failed to diligently pursue the goals of the case plan. As the testimony establishes, CPSU does not have control over how the service provider, Century Health, conducts treatment. Officials at CPSU are not qualified to diagnose mental health conditions; they rely on the service provider to recommend treatments. CPSU diligently pursued the goal of reunification by making the services at Century Health available and by monitoring Ms. Van Atta's use of those services and her progress. They scheduled appointments for her and required her to undergo the psychological evaluation even though she was uncooperative. The agency demonstrated that it fulfilled its obligations in this case. Accordingly, appellant's first assignment of error is overruled.
 II {¶ 13} For ease of discussion, we will address appellant's second and third assignments of error together. In these assignments of error, appellant asserts that CPSU failed to prove by clear and convincing evidence the elements required for permanent custody listed in R.C. 2151.414.
 {¶ 14} The Ohio Revised Code requires that the trial court determine, by clear and convincing evidence, that a grant of permanent custody to the agency that has so moved is in the best interest of the child and that one of four enumerated factors applies. R.C. 2151.414(B)(1). In the instant case, CPSU moved for permanent custody under the first factor, that "[t]he child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1)(a).
 {¶ 15} The Supreme Court of Ohio has held that "clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate; being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear andunequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118, citing Merrick v. Ditzler (1915),91 Ohio St. 256, 110 N.E. 493. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross, supra (citations omitted). Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.
 {¶ 16} The record is clear that Andrew cannot and should not be placed with his father, Dale Cook, within a reasonable time. Andrew has no connection to his father, and Mr. Cook has had no participation with CPSU under any of the filed case plans. Mr. Cook has made it clear through his actions that he has no interest in being a part of Andrew's life and no desire for custody.
 {¶ 17} Additionally, there was sufficient evidence for the trial court to conclude that CPSU proved by clear and convincing evidence that Andrew could not be placed with his mother within a reasonable time. Ms. Van Atta's current clinical therapist, Terry McKinley, is treating her for borderline personality disorder. He testified that she has made no progress in her treatment even with regular and reliable attendance. She has resisted taking her medication, and though she reports that she has taken the medication her situation has not improved. He also testified that she would have to make a significant change in her approach to treatment to make any kind of substantive progress. Dr. Connell, the psychologist who performed a psychological evaluation of Ms. Van Atta, testified that within a reasonable degree of psychological certainty she could not adequately parent Andrew. He concluded that there was nothing CPSU or anyone else could do that could facilitate Andrew's being able to be returned to her care.
 {¶ 18} Finally, there was sufficient evidence in the record for the trial court to conclude that granting permanent custody to CPSU was in Andrew's best interests. In determining the child's best interests, the trial court is required to consider all relevant factors, including the factors listed in R.C.2151.414(D).
 {¶ 19} The first factor listed is "[t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and out-of-home providers, and any other person who may significantly affect the child." R.C. 2151.414(D)(1). The sole relative Andrew appears to have contact with is his mother, Ms. Van Atta. The evidence presented demonstrates that Andrew's relationship with his mother is destructive. One caseworker testified that Ms. Van Atta "seems to have a distorted view of what a mother is. She's very critical of Andrew. Demeaning. Blames all the problems in her life and their life on Andrew * * *." Dr. Connell observed one of Ms. Van Atta's visitations with Andrew, and he indicated that she was not affectionate towards Andrew and was not attentive to his needs. While Andrew was affectionate towards his mother, that affection was not reciprocated.
 {¶ 20} More disturbing is Andrew's relationship with other individuals he is exposed to through his mother, specifically, a James Balicki.[1] Ms. Van Atta met Mr. Balicki while he was living with her neighbor, and she knew that he was abusive in that relationship. Even knowing this, she entered into a physical relationship with Mr. Balicki and allowed him to move into her home and become a caretaker for Andrew. There were reports that Mr. Balicki viewed pornography in the home and that he may have allowed Andrew to view pornographic magazines and videos at home. Dr. Connell also testified that Mr. Balicki was verbally, emotionally, and physically abusive of Andrew.
 {¶ 21} The second factor to be considered in determining the child's best interests is the child's wishes, as expressed directly or through the guardian ad litem. R.C. 2151.414(D)(2). In this case, the guardian ad litem filed a report that concluded it would be in Andrew's best interests to grant permanent custody to the agency.
 {¶ 22} Accordingly, there is substantial evidence supporting the trial court's conclusion that CPSU proved by clear and convincing evidence that granting permanent custody to the agency was in Andrew's best interests. Based on the foregoing, appellant's second and third assignments of error are overruled.
 III {¶ 23} In her fourth assignment of error, appellant contends that the trial court did not have statutory authority pursuant to R.C. 2151.414 to grant permanent custody to CPSU because the agency did not have temporary custody of Andrew pursuant to R.C.2151.353. That statute provides:
(A) If a child is adjudicated an abused, neglected, ordependent child, the court may make any of the following ordersof disposition:
 (1) Place the child in protective supervision;
 (2) Commit the child to the temporary custody of a publicchildren services agency, * * *;
 (B) * * * If after making disposition as authorized bydivision (A)(2) of this section, a motion is filed that requestspermanent custody of the child, the court may grant permanentcustody of the child to the movant in accordance with section2151.414 of the Revised Code.
R.C. 2151.353. Appellant contends that the trial court did not grant temporary custody to CPSU pursuant to R.C. 2151.353(A)(2), but rather pursuant to R.C. 2151.31, and therefore the courts reliance on the authority of R.C. 2151.353(B) was in error.
 {¶ 24} Appellant's argument is clearly erroneous. The trial court granted an ex parte order of temporary custody pursuant to R.C. 2151.31, the code section which provides for the means in which the court may order a child into custody. That section deals only with the way a child may be taken into custody, and does not itself grant a court authority to grant temporary custody to an agency. Rather, the trial court's October 30, 2003 journal entry makes clear that it was acting pursuant to the authority granted in R.C. 2151.353(A)(2) in ordering temporary custody to the agency. Thus, CPSU was permitted to make under section (B) of that statute, and the trial court had the authority to grant, a motion for permanent custody.
 {¶ 25} Based on the foregoing, appellant's fourth assignment of error is overruled, and the judgment of the Court of Common Pleas is affirmed.
Judgment Affirmed.
 Cupp, P.J. and Bryant, J., concur.
[1] This individual is referred to at various points in the record as "James Balicki" or "Mr. Bilicki."