[Cite as *In re A.F.*, 2012-Ohio-1137.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN THE MATTER OF:

A. F.,                                                    CASE NO.  9-11-27

ADJUDGED ABUSED CHILD,

[TIFFANY FLOURNOY -                          O P I N I O N
MOTHER/APPELANT].

**Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2008 AB 0138**

**Judgment Affirmed**

**Date of Decision:   March 19, 2012**

APPEARANCES:

*Raymond A. Grogan, Jr.*  for Appellant

*John A. Minter*  for Appellee, MCCSB

Case No. 9-11-27

**ROGERS, J.**

{¶1} Mother-Appellant, Tiffany Flournoy ("Tiffany"), appeals the judgment of the Court of Common Pleas of Marion County, Family Division, granting permanent custody of her daughter, A.F., to Marion County Children Services ("MCCS").[1]  On appeal, Tiffany contends that the trial court erred in finding that MCCS made reasonable efforts to reunite her and A.F.; that the trial court's judgment granting MCCS permanent custody of A.F. was not in A.F.'s best interest and was against the manifest weight of the evidence; and, that the trial court erred when it found that A.F. could not be returned to her in a reasonable time.  Based on the following, we affirm the judgment of the trial court.

{¶2} A.F. was born on October 24, 2008.  On December 5, 2008, MCCS filed a complaint alleging that A.F. was a neglected, abused, and dependent child as defined by R.C. 2151.03, R.C. 2151.031, and R.C. 2151.04, respectively.  The complaint alleged that "[A.F.] * * * tested positive for cocaine at birth."  Complaint, p. 3.  The complaint further alleged that "[t]hroughout the pregnancy, Tiffany consistently tested positive for marijuana and cocaine."  *Id.*

{¶3} On December 10, 2008, the trial court, upon its own motion, appointed Robert Cordrick ("Cordrick"), to serve as a guardian ad litem ("GAL") for A.F.

---

[1] A.F.'s biological father, Persey Shaw, has neither filed a separate notice of appeal with this Court, nor was he included in Tiffany's notice of appeal.

-2-

{¶4} On February 2, 2009, the matter proceeded to an adjudication hearing. During the hearing, Tiffany stipulated that A.F. was an abused child. February 18, 2009 Judgment Entry. Based on Tiffany's stipulation, the trial court dismissed all other complaints without prejudice. Also on this day, the trial court approved and adopted the case plan submitted by MCCS.

{¶5} In June 2010, MCCS filed a motion for permanent custody pursuant to R.C. 2151.353 and R.C. 2151.414.

{¶6} The permanent custody hearing was divided into three separate hearings. The first hearing occurred on November 3, 2010, the second occurred on May 20, 2011, and the last hearing occurred on May 26, 2011.

{¶7} Carrie Rashleigh ("Rashleigh"), an intake investigator with MCCS, testified that in December 2008 she was employed as a caseworker with MCCS. Rashleigh testified that she was assigned to A.F.'s case at its inception and served as the caseworker until April 2010. Randy Lee ("Lee"), a caseworker with MCCS, testified that he was assigned to A.F.'s case in April 2010.

{¶8} Rashleigh testified that on January 13, 2009, A.F. was removed from Tiffany's custody and placed in foster care with Richard and Melissa Harrison (collectively "the Harrisons"). A.F. has resided with the Harrison's throughout the case.

{¶9} Rashleigh testified that she and Tiffany discussed possible alternative placements for A.F. In particular, they discussed Tiffany's brothers, Marcus and William, Tiffany's sister, Tara, and a family friend, Wanda. According to Rashleigh, Tara was not interested in taking A.F. and Marcus was not an appropriate placement due to his criminal history. As for William and Wanda, Rashleigh testified that initially each was interested in being a placement for A.F. However, Rashleigh explained that MCCS, through no fault of its own, lost contact with William and Wanda before they completed the placement evaluation.

{¶10} Rashleigh testified that on February 2, 2009, she and Tiffany developed a case plan designed to remedy the concerns that caused A.F.'s removal.[2] The case plan outlined four concerns and the means by which those concerns were to be remedied. Three of the concerns focused on Tiffany.[3] The case plan also outlined a visitation plan. Rashleigh testified that in order to assist Tiffany in achieving the case plan's requirements MCCS maintained contact with Tiffany, conducted in-person meetings with Tiffany, provided Tiffany with bus tickets, and made necessary referrals.

{¶11} The first concern outlined in the case plan addressed Tiffany's inability to be self-sufficient and her lack of appropriate housing. In order to

---

[2] An amended case plan was filed on August 24, 2010. Lee testified that except for the requirement that Tiffany obtain a psychological evaluation the amended case plan did not modify the concerns, the means by which those concerns were to be remedied, or the visitation plan outlined in the original case plan.
[3] For purposes of this appeal, discussion of the second concern is unnecessary as it outlines steps the Harrisons, not Tiffany, needed to take to ensure A.F.'s basic needs were met.

remedy Tiffany's inability to be self-sufficient, the case plan directed Tiffany to complete the following, in relevant part:

> **1.    Within 90 days of the court stamp on this case plan, Tiffany will obtain and maintain legal and stable employment to a level capable for self sufficiency (sic).**  February 2, 2009 Case Plan, p. 2.

{¶12} Rashleigh testified that she mailed Tiffany a local job list and that Tiffany actively sought employment.  Rashleigh testified that in July 2009 Tiffany obtained employment with Marion Business Solutions, but left the position because her income was insufficient.  Rashleigh testified that Tiffany obtained employment with Marion Business Solutions again in September 2009, but left the position shortly thereafter.  Rashleigh testified that as of April 2010, Tiffany had not maintained employment.  During the May 20, 2011 hearing, Tiffany testified that she began working for Healthcare Depot in April 2010.  Tiffany testified that she remained employed with Healthcare Depot, but was not working any hours.

{¶13} In order to remedy the lack of appropriate housing, the case plan directed Tiffany to complete the following, in relevant part:

> **5.    Within 90 days of the court stamp on this plan, Tiffany will obtain and maintain Agency approved housing * * *.**  February 2, 2009 Case Plan, p. 2.

{¶14} Initially, Tiffany lived at 216 Wallace ("Wallace residence") in Marion.  Rashleigh testified that she conducted several home visits of the Wallace residence and determined that the residence was not suitable for A.F.  Tiffany

subsequently moved to 399 ½ North Main Street ("North Main residence") in Marion. Rashleigh, however, testified that she was not able to conduct a home visit of the North Main residence.

{¶15} Lee testified that Tiffany initially was unable to provide him with a permanent address. Tiffany informed Lee that she applied to Fairview Apartments. Lee testified that he sent a letter of recommendation to the manager of Fairview Apartments on Tiffany's behalf. Sometime after Lee sent the letter of recommendation, Tiffany obtained housing at Fairview Apartments. Lee testified that Tiffany's residence at Fairview Apartments was appropriate.

{¶16} During the May 20, 2011 hearing, Tiffany testified that she moved back to the North Main residence in March 2011. Tiffany explained that she shares the residence with her boyfriend. Tiffany testified that her boyfriend had been incarcerated for trafficking controlled substances, but insisted that "he has a different life." May 20, 2011 Hearing Tr., p. 321. Tiffany testified that Lee attempted to conduct a home visit of the North Main residence, but she requested that he not come because her boyfriend was recovering from an accident.

{¶17} The third concern outlined in the case plan addressed Tiffany's substance abuse. In order to remedy her substance abuse, the case plan directed Tiffany to complete the following, in relevant part:

1. **Tiffany will complete an AOD assessment * * *.**

**2. Tiffany will follow any and all recommendation (sic) stemming from the AOD assessment and complete alcohol and drug treatment prior to reunification.**

**3. \* \* \***

**4. Tiffany will abstain from using illegal substances \* \* \*.**

**5. Tiffany will submit to random drug and alcohol screens, as deemed necessary by the caseworker. Failure to screen on the date requested will be considered a "dirty" or "positive" test.**

February 2, 2009 Case Plan, p. 4.

{¶18} Initially, Tiffany was scheduled to complete an alcohol and drug assessment ("AOD assessment") at the Marion Area Counseling Center ("MACC"). Rashleigh testified that Tiffany missed the AOD assessment, as well as several subsequent AOD assessments. In June 2009, Tiffany contacted Rashleigh and inquired about inpatient treatment. Rashleigh testified that she informed Tiffany that she was aware of two programs that offered inpatient treatment, Stepping Stones in Portsmouth, Ohio, and Foundations in Marion, Ohio. Rashleigh testified that Tiffany was interested in Foundations so she referred Tiffany to Foundations. Rashleigh learned that Tiffany would have to complete an AOD assessment to be admitted to Foundations. Rashleigh testified that MACC would not conduct an AOD assessment of Tiffany due to her prior missed appointments. Rashleigh testified that she considered referring Tiffany to Journey Offender Services ("Journey") to complete an AOD assessment. MACC, however, informed Rashleigh that even if Journey referred Tiffany to Foundations, Tiffany would still have to complete an AOD assessment with MACC. In light of

this information, Rashleigh determined that referring Tiffany to Journey for an AOD assessment was "pointless" because Tiffany was prohibited from completing an AOD assessment at MACC, due to her prior missed appointments. November 3, 2010 Hearing Tr., p. 45.

{¶19} Though MACC prohibited Tiffany from completing an AOD assessment, Rashleigh testified that she attempted to convince MACC to conduct an AOD assessment of Tiffany. Rashleigh testified that she contacted Elaine Ring ("Ring"), an employee with MACC, on several occasions. As a result of her conversations with Ring, Rashleigh testified that MACC permitted Tiffany to return for an AOD assessment.

{¶20} Rachel McPherson ("McPherson"), a mental health and substance abuse counselor with MACC, testified that she conducted an AOD assessment of Tiffany on October 30, 2009. The AOD assessment revealed that Tiffany used alcohol, marijuana, and cocaine. Based on the results of the AOD assessment, McPherson testified that she and Tiffany developed an individual service plan ("ISP"). The ISP consisted of individual counseling, group counseling, Phase One Group ("POG"), Pre-Intensive Outpatient Group ("pre-IOG"), and Intensive Outpatient Group ("IOG"). McPherson testified that Tiffany completed POG and began, but did not complete, Pre-IOG. As a result, McPherson testified that Tiffany could not begin IOG. During the November 3, 2010 hearing, McPherson

testified that her last contact with Tiffany occurred on April 2, 2010. On June 4, 2010, MACC closed Tiffany's case due to her lack of attendance. Though Tiffany's case was closed, Lee testified that he sent a letter to Ring in an effort to determine whether Tiffany could return to MACC to continue treatment. State's Exhibit D. In response to his letter, Lee testified that Ring informed him that Tiffany could return to MACC for treatment.

{¶21} During the May 20, 2011 hearing, McPherson testified that her first contact with Tiffany after the November 2010 hearing occurred in March 2011. McPherson explained that Tiffany came to MACC for an AOD assessment to reactivate her case. McPherson testified that in April 2011 Tiffany was evaluated to determine whether she could participate in inpatient treatment. The evaluation stated that Tiffany would be appropriate for Foundations. McPherson explained that the evaluation did not specify whether inpatient or outpatient treatment was more appropriate, as Foundations offers both inpatient and outpatient services. McPherson continued that to her knowledge Tiffany was interested in outpatient treatment, not inpatient treatment.

{¶22} Julie McGinnis ("McGinnis"), a specialized dockets coordinator with the Family Dependency Treatment Court in Marion County, testified that Tiffany's attorney, Larry Heiser, contacted her to schedule an appointment for Tiffany. The initial appointment was scheduled for March 17, 2010. McGinnis

explained that during the initial appointment she would have informed Tiffany about the Family Dependency Treatment Court program. McGinnis testified that Tiffany did not attend the initial appointment. McGinnis testified that she attempted to contact Tiffany on several occasions to reschedule the appointment, but Tiffany did not return her calls. Then, in May 2010, McGinnis testified that Tiffany visited her at the Family Dependency Treatment Court. After Tiffany's visit, McGinnis testified that she renewed her attempts to schedule Tiffany for an appointment, but explained that she never again heard from Tiffany.

{¶23} Cynthia Wall ("Wall"), a probation officer with the Marion Municipal Court, testified that she was Tiffany's probation officer. Wall testified that Tiffany was on five years' probation. As of November 3, 2010, the terms of Tiffany's probation required her to complete, in relevant part, court approved drug and alcohol counseling and prohibited her from consuming or possessing controlled substances. Wall testified that on November 12, 2010, Tiffany tested positive for cocaine and marijuana. As a result, Tiffany was sentenced to serve 73 days in jail. Wall testified that on April 4, 2011, Tiffany again tested positive for cocaine. As a result, Tiffany was sentenced to serve 30 days in jail. Wall testified that Tiffany was scheduled to begin treatment at Foundations on May 17, 2011. When Tiffany arrived at Foundations she refused to submit to a drug screen. Consequently, Foundations denied Tiffany admission. Wall visited Tiffany later

that day, at which time Tiffany admitted that she recently used cocaine and marijuana.

{¶24} Throughout the case, Tiffany was administered several random drug screens. Rashleigh testified that between March 2009 and April 2010, she attempted to administer twenty random drug screens to Tiffany. Tiffany, however, only submitted to sixteen drug screens. Of those sixteen drug screens, Rashleigh testified that Tiffany tested positive for controlled substances seven times. Lee testified that between May 2010 and October 2010, he attempted to administer eight random drug screens to Tiffany. Of those eight drug screens, Lee testified that Tiffany tested positive for controlled substances six times.

{¶25} The fourth concern outlined in the case plan addressed Tiffany's need to monitor A.F.'s physical, cognitive, and social development. In order to remedy this concern, the case plan directed Tiffany to complete the following, in relevant part:

> **3. Tiffany will attend and complete parenting classes * * *.**
> **4. If deemed necessary, Tiffany will obtain a psychological evaluation by an Agency approved evaluator * * *, and follow through with any and all recommendations made by the psychological assessor.[4]** February 2, 2009 Case Plan, p. 5.

---

[4] The amended case plan simply omitted the phrase "[i]f deemed necessary." *See* August 24, 2010 Case Plan, p. 5.

{¶26} During the November 3, 2010 hearing, Rashleigh and Lee each testified that Tiffany completed the parenting classes. During the same hearing, however, Lee testified that Tiffany had not completed a psychological evaluation.

{¶27} Kimberly Stark ("Stark"), a clinical psychologist, testified that she conducts psychological evaluations for MCCS. Stark explained that a psychological evaluation consists of two parts, a clinical interview and psychological testing. Stark testified that Lee referred Tiffany to her in July 2010. Stark conducted a clinical interview with Tiffany in August 2010. Stark and Tiffany scheduled a follow-up appointment to conduct the psychological testing, but Tiffany did not attend the appointment. During the November 3, 2010 hearing, Stark testified that she attempted to reschedule several times, but Tiffany did not return to complete the psychological testing. During the May 20, 2011 hearing, Stark testified that she has made repeated attempts to schedule Tiffany for an appointment since the November 2010 hearing. Despite her efforts, Stark testified that Tiffany has not returned to complete the psychological evaluation.

{¶28} The case plan also outlined a visitation plan. The visitation plan provided that Tiffany have supervised visitation with A.F. once a week. Initially, the visitation period was scheduled to occur between 9:30 a.m. and 11:30 a.m. Lee testified that he noticed Tiffany was having difficulty arriving for visitation on time. Lee testified that, as a result, he moved the visitation period back.

{¶29} Between January 2009 and October 2010, there were 97 scheduled visits with A.F. State's Exhibit B. Tiffany, however, did not attend 39 of those visits. *Id*. Though Rashleigh and Lee each testified that several of the missed visits were outside of Tiffany's control, they explained that a majority of the missed visits were not accompanied by a reasonable explanation.

{¶30} During the May 20, 2011 hearing, Carol Buxton, a case aid employed with MCCS, testified that between November 2010 and May 2011, there were 28 scheduled visits with A.F. State's Exhibit E. Tiffany, however, did not attend 25 of those visits. *Id*.

{¶31} During the November 3, 2010 hearing, Rashleigh and Lee each testified that Tiffany did not satisfy many of the requirements outlined in the case plan. Specifically, Tiffany did not maintain adequate employment, secure an appropriate residence, complete substance abuse treatment, abstain from drugs and alcohol, or complete a psychological evaluation. Rashleigh testified that A.F. bonded with Tiffany and the Harrisons. Rashleigh explained that A.F. appeared comfortable with Tiffany and was excited to see Tiffany. Rashleigh further explained that the Harrisons were attentive to A.F.'s needs and A.F. expressed affection towards them. Lee also testified that A.F. bonded with Tiffany and the Harrisons. Lee explained that A.F. is doing "fantastic" with the Harrisons, that their relationship is "great," and that she would call the Harrisons "mommy and

daddy." November 3, 2010 Hearing Tr., p. 169. Rashleigh and Lee testified that granting MCCS permanent custody of A.F. is in her best interest. Lee testified that if MCCS were granted permanent custody of A.F., her current placement with the Harrisons is a possible long-term placement, because the Harrisons are a "foster-to-adopt home." *Id.* at p. 170.

{¶32} Cordrick testified that he served as A.F.'s GAL since the inception of the case. Cordrick testified that A.F. appeared to be bonded to Tiffany and the Harrisons. Though Cordrick personally observed A.F. and the Harrisons together, he admitted that he learned of A.F.'s bond with Tiffany via conversations with the Harrisons. Cordrick continued that MCCS made reasonable efforts to reunite Tiffany and A.F. Though MCCS made reasonable efforts, Cordrick testified that he did not believe MACC adequately explored the option of inpatient treatment with Tiffany. Cordrick also testified that several of the visits Tiffany missed were caused by transportation issues outside of Tiffany's control. Despite this testimony, Cordrick recommended that A.F. be placed in MCCS's permanent custody. Cordrick explained that his recommendation primarily stemmed from Tiffany's substance abuse and missed visits. Cordrick testified that Tiffany was given "every opportunity" to take part in some treatment program. May 26, 2011 Hearing Tr., p. 358. Additionally, Cordrick testified that Tiffany did not have a reasonable explanation for many of the visits she did not attend.

**{¶33}** In June 2011, the trial court filed its judgment entry granting MCCS permanent custody of A.F. In doing so, the trial court found that MCCS made reasonable efforts to reunite A.F. and Tiffany, pursuant to R.C. 2151.419; that the record contained clear and convincing evidence that A.F. could not be placed with Tiffany within a reasonable time nor should A.F. be placed with Tiffany, pursuant to R.C. 2151.414(B)(1)(a); and, that the record contained clear and convincing evidence that placing A.F. in MCCS's permanent custody is in her best interest, pursuant to R.C. 2151.414(D)(1).

**{¶34}** It is from this judgment Tiffany appeals, presenting the following assignments of error for our review.

### *Assignment of Error No. I*

**THE TRIAL COURT ERRED IN FINDING WITH CLEAR AND CONVINCING EVIDENCE THAT MARION COUNTY CHILDREN SERVICES MADE REASONABLE EFFORTS TO ASSIST MOTHER TO REMEDY THE PROBLEM THAT CAUSED THE CHILD TO BE REMOVED.**

### *Assignment of Error No. II*

**THE TRIAL COURT ERRED IN FINDING THAT IT WAS IN THE CHILD'S BEST INTEREST TO GRANT THE MOTION FILED BY MARION COUNTY CHILDREN SERVICES AND GRANTED MARION COUNTY CHILDREN SERVICES PERMANENT CUSTODY OF THE CHILD AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED WHEN IT FOUND THAT THE CHILDREN (sic) COULD NOT BE RETURNED TO MOTHER IN A REASONABLE TIME PURSUANT TO OHIO REVISED CODE SECTION 2151.414(E).**

{¶35} Due to the nature of Tiffany's assignments of error, we elect to address her second and third assignments of error together.

*Assignment of Error No. I*

{¶36} In Tiffany's first assignment of error, she contends that the trial court erred in finding that MCCS made reasonable efforts to reunite her and A.F. Specifically, Tiffany contends that MCCS did not make reasonable efforts to assist her in gaining admission to an inpatient treatment program; that McPherson did not consider the possibility of inpatient treatment; that MCCS's expectations of her were unrealistic; and, that MCCS did not facilitate visitation between her and A.F. We disagree.

*Law*

{¶37} "R.C. 2151.419 imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home." *In re Sorg*, 3d Dist. No. 5-02-03, 2002-Ohio-2725, ¶ 13, citing *In re Brown*, 98 Ohio App.3d 337, 344 (3d Dist. 1994). "The agency bears the burden of showing that it made such reasonable efforts." *In re Sorg* at ¶ 13, citing R.C. 2151.419(A)(1).

{¶38} "Case plans are the tool that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." *In re Evans*, 3d Dist. No. 1-01-75 (Oct. 30, 2001). To that end, case plans establish individualized concerns and goals, along with steps that the parties and the agency can take to achieve reunification. *Id.*, citing R.C. 2151.412. Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan. *Id.* "Nevertheless, the issue is not whether there was anything more that [the agency] could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of [the] case." *In re Leveck*, 3d Dist. Nos. 5-02-52, 5-02-53, 5-02-54, 2003-Ohio-1269, ¶ 10.

*Analysis*

{¶39} First, Tiffany contends that MCCS did not make reasonable efforts to assist her in gaining admission to an inpatient treatment program. Tiffany focuses on Rashleigh's statement that it was "pointless" to refer her to Journey for an AOD assessment. Tiffany maintains that Rashleigh's statement demonstrates that MCCS did not make reasonable efforts to reunite her with A.F.

{¶40} Rashleigh's testimony that it would have been "pointless" to refer Tiffany to Journey for an AOD assessment does not demonstrate a lack of reasonable effort. First, referral to Journey was rendered "pointless" as a result of Tiffany's actions and/or inaction. To be accepted into Foundation's inpatient

treatment program, Tiffany needed to complete an AOD assessment with MACC. MACC, however, prohibited Tiffany from completing an AOD assessment as a result of her prior missed appointments. Consequently, referral to Journey was "pointless" because of Tiffany's prior missed appointments. Second, despite Rashleigh's testimony that referral to Journey would have been "pointless," the record reveals that MCCS made efforts to convince MACC to conduct an AOD assessment of Tiffany. As a result of the MCCS's efforts, MACC agreed to conduct an AOD assessment of Tiffany. In light of the foregoing, we find Tiffany's first contention is without merit.

{¶41} Next, Tiffany contends that McPherson did not consider the possibility of inpatient treatment. Tiffany contends that despite the recommendation that she receive inpatient treatment, McPherson continued to offer her outpatient treatment. As a result, Tiffany contends that MCCS's efforts concerning her treatment were unreasonable.

{¶42} Though Tiffany contends that McPherson's decision to continue with outpatient treatment is indicative of MCCS's unreasonable efforts, Tiffany overlooks the fact that McPherson is not an agent of MCCS, but an employee of MACC. Consequently, this contention does not demonstrate that MCCS's efforts were unreasonable. *See In re Jo.S.*, 3d Dist. Nos. 5-11-16, 5-11-17, 2011-Ohio-6017, ¶ 33; *In re Van Atta*, 3d Dist. No. 5-05-03, 2005-Ohio-4182, ¶ 12.

Furthermore, the record reveals that there was no recommendation for inpatient treatment. The recommendation Tiffany alludes to stems from an evaluation that occurred in April 2011. The evaluation noted that Tiffany would be appropriate for Foundations, which offers both inpatient and outpatient treatment. There was no testimony or evidence that the evaluation recommended Tiffany receive inpatient treatment. In fact, McPherson testified that Tiffany preferred outpatient treatment. Accordingly, we find Tiffany's second contention is without merit.

{¶43} Next, Tiffany contends that MCCS's expectations of her were unrealistic. Tiffany contends that she was not given a reasonable opportunity to complete the requirements in the amended case plan. In particular, Tiffany contends that she was afforded approximately sixty days (i.e. from the day the amended case plan was filed to the first day of the permanent custody hearing) to complete requirements which were to be completed within ninety days.

{¶44} Though the amended case plan was filed approximately sixty days prior to the November 3, 2010 permanent custody hearing, Tiffany was given a reasonable opportunity to satisfy the amended case plan's requirements. The amended case plan was identical to the original case plan in every way except for a slight alteration to the requirement that Tiffany obtain a psychological evaluation. Due to the similarity between the original and amended case plans, we look to the filing date of the original case plan in determining whether MCCS gave

Tiffany a reasonable opportunity to complete the case plan's requirements. The original case plan was filed on February 2, 2009. Accordingly, Tiffany had one year and nine months to complete the requirements. This period of time was more than reasonable to complete the case plan's requirements. *See In re Nice*, 141 Ohio App.3d 445, 456-57 (7th Dist. 2001). Accordingly, we find Tiffany's third contention is without merit.

{¶45} Last, Tiffany contends that MCCS did not make reasonable efforts to facilitate visitation between her and A.F. In particular, Tiffany contends that MCCS did nothing to alleviate issues with transportation to the visitation site.

{¶46} Review of the record reveals that MCCS made reasonable efforts to facilitate visitation. Rashleigh testified that MCCS provided Tiffany with bus tickets. Lee testified that when he noticed Tiffany having difficulty arriving for visitation on time, he moved the visitation period back. Despite these efforts, Tiffany still did not attend numerous scheduled visits. While Rashleigh and Lee testified that several of the missed visits were outside of Tiffany's control, they explained that a majority of the missed visits were not accompanied by a reasonable explanation. Given the foregoing, we find Tiffany's final contention is without merit.

{¶47} Aside from Tiffany's contentions, review of the record reveals that MCCS made reasonable and diligent efforts to reunite Tiffany and A.F. In

addition to the efforts discussed above, the record reveals that MCCS maintained contact with Tiffany, conducted in person meetings with Tiffany, and made referrals. In addition to these services, there is evidence that MCCS tailored its efforts to assist Tiffany in meeting specific requirements, i.e. Rashleigh sent Tiffany a local job list, and Lee sent a letter of recommendation to Fairview Apartments on Tiffany's behalf.

{¶48} In light of the foregoing, we find that MCCS made reasonable and diligent efforts to reunite Tiffany and A.F. Accordingly, we overrule Tiffany's first assignment of error.

*Assignments of Error Nos. II & III*

{¶49} In Tiffany's second and third assignments of error, she contends that the trial court's decision to grant MCCS permanent custody of A.F. was not in A.F.'s best interest, and the trial court erred in finding that A.F. could not be returned to her in a reasonable time. We disagree.

*Standard of Review*

{¶50} "It is well recognized that the right to raise a child is an 'essential' and 'basic' civil right." *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), citing *In re Murray*, 52 Ohio St.3d 155, 157 (1990). Parents have a fundamental liberty interest in the care, custody, and upbringing of their children. *In re Murray*; *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, a

natural parent's rights are not absolute. *In re Thomas*, 3d Dist. No. 5-03-08, 2003-Ohio-5885, ¶ 7. "It is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App.1974).

{¶51} Permanent custody determinations made under R.C. 2151.414 must be supported by clear and convincing evidence. *In re Baby Girl Doe*, 149 Ohio App.3d 717, 2002-Ohio-4470, ¶ 89 (6th Dist.), citing *In re Hiatt*, 86 Ohio App.3d 716, 725 (4th Dist. 1993). "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986).

{¶52} When "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954), citing *Ford v. Osborne*, 45 Ohio St. 1 (1887). Thus, we are required to determine whether the trial court's determination was supported by sufficient credible evidence to satisfy the requisite

degree of proof, *In re McCann*, 12th Dist. No. CA2003-02-017, 2004-Ohio-283, ¶ 12, citing *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16, and, absent an abuse of discretion, the trial court's decision must be upheld. *In re Robison*, 3d Dist. No. 5-07-41, 2008-Ohio-516, ¶ 8, citing *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 17-18, citing Black's Law Dictionary (8 Ed.Rev.2004) 11. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### *Law*

**{¶53}** "Once a child has been adjudicated dependent, neglected, or abused and temporary custody has been granted to a children services agency, the agency may file a motion for permanent custody * * *." *In re Esparza*, 3d Dist. Nos. 9-06-25, 9-06-27, 2007-Ohio-113, ¶ 25. In determining whether to grant the agency permanent custody, the trial court must conduct a two-pronged analysis. *In re D.M.*, 3d Dist. Nos. 5-09-12, 5-09-13, 5-09-14, 2009-Ohio-4112, ¶ 31. The trial court must determine, by clear and convincing evidence, whether any provisions enumerated in R.C. 2151.414(B)(1) are present. *In re Goodwin*, 3d Dist. No. 17-08-12, 2008-Ohio-5399, ¶ 21. R.C. 2151.414(B)(1) states, in relevant part:

**(B)(1) \* \* \* the court may grant permanent custody of a child to a movant if the court determines \* \* \* by clear and convincing evidence, \* \* \* that *any* of the following apply:**

**(a)   The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.**

**\* \* \***

**(d)   The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.**
(Emphasis added.)

**{¶54}** In determining whether R.C. 2151.414(B)(1)(a) applies, the trial court must consider the factors enumerated in R.C. 2151.414(E). *In re Goodwin* at ¶ 23.  If one or more of the factors enumerated in R.C. 2151.414(E) is found to be present by clear and convincing evidence, the trial court shall find that the child cannot be placed with the parents within a reasonable period of time or should not

be placed with the parents. *Id.*; *see also In re D.M.* at ¶ 33. The factors enumerated in R.C. 2151.414(E) are, in relevant part:

> **(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.**

> **\* \* \***

> **(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;**

> **\* \* \***

> **(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.**

**{¶55}** If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest. *In re D.M.* at ¶ 33; *In re K.H.*, 3d Dist. No. 5-10-06, 2010-

Ohio-3801, ¶ 30. In making this determination, R.C. 2151.414(D)(1) directs the trial court to consider the following non-exclusive factors:

> **(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**
>
> **(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**
>
> **(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;**
>
> **(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**
>
> **(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

*Analysis*

**{¶56}** Initially, we note that while the trial court applied R.C. 2151.414(B)(1)(a) in determining the first prong, it could have also applied R.C. 2151.414(B)(1)(d), as neither party disputed the fact that A.F. has been in MCCS's temporary custody for twelve or more months of a consecutive twenty-two-month

period. This fact alone would have satisfied the first prong. Since, however, the trial court applied R.C. 2151.414(B)(1)(a) in determining the first prong of the custody analysis, we will address the merits of Tiffany's third assignment of error, challenging the trial court's finding that A.F. cannot be placed with her in a reasonable period of time and should not be placed with her.

{¶57} Citing R.C. 2151.414(B)(1)(a), the trial court determined that the State established the existence of several factors enumerated in R.C. 2151.414(E) by clear and convincing evidence. In particular, the trial court found that MCCS presented evidence establishing the existence of R.C. 2151.414(E)(1), (4), and (13). Based on the following, we find that the trial court did not abuse its discretion, as its finding was supported by clear and convincing evidence.

{¶58} During the November 3, 2010 hearing, Rashleigh testified that as of April 2010, Tiffany did not complete many of the case plan's requirements. Specifically, Rashleigh testified that Tiffany did not maintain employment sufficient to support her and A.F., obtain suitable housing, complete treatment for her substance abuse, or abstain from drugs. During the same hearing, Lee testified that since April 2010 Tiffany obtained employment with Healthcare Depot and obtained suitable housing at Fairview Apartments. Lee, however, also testified that Tiffany did not complete a psychological evaluation, complete treatment for her substance abuse, or abstain from drugs.

{¶59} During the May 20, 2011 hearing, testimony revealed that Tiffany still did not complete substance abuse treatment or a psychological evaluation. Testimony also revealed that Tiffany was not working any hours at Healthcare Depot and recently moved out of Fairview Apartments. Tiffany testified that Lee attempted to visit her current residence, but she discouraged such visits because her live-in boyfriend, who had a history of drug trafficking, was recovering from an accident.

{¶60} Furthermore, the record contains evidence that Tiffany did not attend numerous visits with A.F. There were a total of 125 scheduled visits between Tiffany and A.F. Of the 125 scheduled visits, Tiffany did not attend 64 of those visits. While several of the visits Tiffany missed were outside of her control, a majority of the visits Tiffany missed were not accompanied by a reasonable explanation.

{¶61} Last, the record reveals that Tiffany was incarcerated on two separate occasions during the pendency of the case.

{¶62} Based on the evidence presented, we find that there was clear and convincing evidence that A.F. could not be placed with Tiffany in a reasonable time and should not be placed with Tiffany.

{¶63} In considering the child's best interests, the trial court found that granting MCCS permanent custody of A.F. was in her best interest. Based on the

following, we find that the trial court did not abuse its discretion, as its finding was supported by clear and convincing evidence.

{¶64} Several months after A.F.'s birth, in January 2009, A.F. was removed from Tiffany's custody and placed in foster care with the Harrisons. A.F. has remained in the Harrisons' care throughout the pendency of the case. Since A.F.'s removal, Tiffany's interaction with A.F. has been limited to supervised visitation, which was scheduled to occur once a week. Throughout the case, Tiffany did not attend numerous visits without a reasonable explanation. Despite Tiffany's spotty visitation history, Rashleigh and Lee each testified that A.F. bonded with Tiffany. Rashleigh explained that A.F. appeared comfortable with Tiffany and was excited to see her.

{¶65} As for A.F.'s relationship with the Harrisons, Rashleigh and Lee each testified that A.F. bonded with the Harrisons. Rashleigh explained that the Harrisons are attentive to A.F.'s needs, and A.F. expressed affection towards the Harrisons. Lee explained that A.F. is doing "fantastic" with the Harrison's, that their relationship is "great," and that A.F. calls the Harrisons "mommy and daddy." November 3, 2010 Hearing Tr., p. 169. Similarly, Cordrick testified that, based on personal observations, A.F. has a strong bond with the Harrisons.

{¶66} Next, the record demonstrates that A.F. is too young to express her own wishes concerning permanent custody. Consequently, Cordrick expressed

A.F.'s wishes. Cordrick was reluctant in making his recommendation. Cordrick's reluctance was primarily based on his belief that MACC did not adequately explore inpatient treatment with Tiffany, and his observation that several of the visits Tiffany missed were outside of her control. Despite Cordrick's reluctance, he recommended that MCCS be granted permanent custody of A.F. Cordrick's recommendation was grounded in belief that MCCS made reasonable efforts to reunite Tiffany and A.F.; that Tiffany was given every opportunity to take part in a treatment program; and, that Tiffany missed numerous scheduled visits with A.F. without reasonable explanation.

{¶67} Next, as discussed above, the record demonstrates that A.F. has been in MCCS's temporary custody for twelve or more months of a consecutive twenty-two-month period.

{¶68} Last, the record demonstrates that due to A.F.'s young age she is in need of a secure placement. Based on the record, Tiffany cannot serve as a secure placement. To her credit, Tiffany completed parenting classes and demonstrated some initiative in seeking employment, appropriate housing, and beginning treatment. After more than two years, however, Tiffany failed to complete many of the case plan's key requirements. Though Tiffany is currently employed, she testified that she is not working any hours. Consequently, her employment is not sufficient to support her and A.F. At one point, Tiffany resided at Fairview

Apartments, which Lee deemed appropriate. However, Tiffany has since moved to another residence and has not allowed Lee to conduct a home visit to determine whether the residence is appropriate. Tiffany began, but did not complete, a psychological evaluation. Similarly, Tiffany began, but did not complete, the treatment program at MACC, nor did she take part in the Family Dependency Treatment Court program. Instead, Tiffany abused drugs throughout the case, which resulted in her repeated incarceration. Taken together, Tiffany's failure to remedy the concerns outlined in the case plan demonstrate that she is not a secure placement for A.F.

{¶69} MCCS also determined that none of the alternative placements provided by Tiffany were secure placements. Marcus had an extensive criminal history. Tara was not interested in taking A.F. William and Wanda began the process of being considered as a placement for A.F., but MCCS, through no fault of its own, lost contact with them before they completed the placement evaluation.

{¶70} Given the foregoing, we find that there was clear and convincing evidence supporting the trial court's finding that granting MCCS permanent custody of A.F. is in her best interest.

{¶71} Accordingly, we find that the trial court did not abuse its discretion by granting MCCS permanent custody of A.F., as there was clear and convincing evidence to support its decision.

**{¶72}** Therefore, we overrule Tiffany's second and third assignments of error.

**{¶73}** Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**