OPINION *Page 2 
{¶ 1} Appellant-mother Deanna W. appeals the February 11, 2008, judgment entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated her parental rights with respect to her son, Brandon R. and granted permanent custody of the child to appellee, the Tuscarawas County Department of Job and Family Services (hereinafter "TCJFS").
 I. Procedural History {¶ 2} Deanna W. gave birth to Brandon R. on January 17, 2007. Brandon's father is Anthony R. The parents are not married. They have resided together for the entirety of this case. Shortly following his birth, a drug test revealed that Brandon had barbiturates in his system. Brandon was in the hospital from January 17 to January 27 for withdrawal symptoms, at which time he was on a feeding tube.
 {¶ 3} Appellant-mother had tested positive for cocaine late in her pregnancy, in December 2006. She also failed to obtain prenatal care for Brandon despite written warning that failure to do so could create severe complications for the baby.
 {¶ 4} Brandon was removed from the custody of the parents and placed into the custody of TCJFS on January 19, 2007. TCJFS filed a complaint on January 22, 2007. The Court adjudicated Brandon to be a dependent child on February 21, 2007. TCJFS filed an initial case plan, which the Court adopted on February 21, 2007.
 {¶ 5} Appellant-mother has been involved with TCJFS in the past for concerns similar to the concerns in the instant case. In 2001, she gave birth to a daughter, Brianna. At that time, appellant-mother also had issues with drugs. She was provided *Page 3 
case plan services and she failed to complete the same. Brianna is currently in the custody of her father.
 {¶ 6} The initial case plan, adopted by the court on February 21, 2007, and subsequently updated, directed appellant-mother to 1). Complete a psychological evaluation and follow its recommendations, 2). Complete a drug and alcohol assessment and follow its recommendations, 3). Undergo individual counseling, 4). Provide clean drug tests, 5). Obtain and maintain employment, and 6). Attend parenting classes.
 {¶ 7} Appellant-mother did complete a psychological examination at Community Mental Healthcare with Dr. Rajendra Misra. Dr. Misra testified at the permanent custody hearing and the Psychological Evaluation of appellant-mother was admitted into evidence as State's Exhibit B.
 {¶ 8} Dr. Misra diagnosed appellant-mother with two clinical disorders on Axis I, i.e., Generalized Anxiety Disorder, and Cocaine Abuse. Dr. Misra testified that Generalized Anxiety Disorder could affect one's ability to parent because the person will have difficulty planning or anticipating things. Regarding the diagnosis of cocaine abuse, Dr. Misra testified at trial that literature has found that drug use and alcohol is the most significant predictor of poor parenting skills.
 {¶ 9} Dr. Misra also recounted how appellant-mother stated during the clinical interview that the anti-anxiety medication Xanax is the only thing that she felt helped her deal with her anxiety. Dr. Misra testified that Xanax is a highly addictive drug and usually psychiatrists are conservative in prescribing it. He stated that appellant-mother's fixation on Xanax, even after being told of other drugs that are equally effective without *Page 4 
the side effects, is an obsessive-compulsive feature that needed to be addressed through therapy.
 {¶ 10} On Axis II, Dr. Misra diagnosed appellant-mother with features of Paranoid, Antisocial Personality Disorders. The report recommended that she receive psychiatric treatment and cognitive behavior therapy and that Brandon remain in the care of TCJFS.
 {¶ 11} Appellant-mother did complete a drug and alcohol assessment. She further completed the Intensive Outpatient Program (IOP) portion of treatment at the Alcohol and Addiction Program. Appellant-mother did not complete the Relapse Prevention or After Care portions of the program as instructed. Ron McConnell, a counselor for the Tuscarawas Health Department Alcohol and Addiction Program, testified that the Relapse Prevention consisted of twelve sessions for one and one-half hours one day per week followed by six sessions of After Care.
 {¶ 12} Appellant-mother scheduled an appointment at Southeast Counseling Center early in the case but failed to keep it. She began individual counseling with Pete Botti at Community Mental Healthcare, and while she did attend at first, by June, 2007 she had missed numerous appointments with him. In November 2007, appellant-mother attended one session with Sandra Lankford at CMH but never returned after her initial visit. Appellant-mother's visits with Brandon were suspended by the Juvenile Court in June 2007 due to her lack of attendance. Since that time, appellant-mother only attended one individual counseling session.
 {¶ 13} Ron McConnell from the Alcohol and Addiction Program testified that appellant-mother was tested for drugs as part of her IOP program. He testified that *Page 5 
appellant-mother tested negative for cocaine on the following dates in 2007: February 21, February 27, March 2, October 25, and November 8.
 {¶ 14} Appellant-mother admitted using cocaine in June 2007. Mr. McConnell testified that he did not know if appellant-mother was in fact using cocaine from early March through late October 2007. Moreover, he did not know if she had used cocaine from November 8, 2007 through the permanent custody hearing in early February, 2008.
 {¶ 15} Brigette Lemberg, a toxicologist with a Masters degree in toxicology from the University of Kentucky also testified. Ms. Lemberg testified that when an initial drug screen elicits a positive test result, that screen is tested again with a device called a mass spectrometer. Ms. Lemberg stated that the mass spectrometer device used at Forensic Fluid Labs is virtually 100 percent accurate.
 {¶ 16} TCJFS admitted into evidence several drug screens from appellant-mother. These drug tests utilized appellant-mother's salvia for testing purposes. Those results reveal that appellant-mother tested positive for cocaine on September 4, 2007, October 17, 2007, and November 8, 2007. Further test results that utilized appellant-mother's hair show that appellant-mother tested positive for cocaine on September 4, 2007, October 17, 2007, November 8, 2007, and December 28, 2007.
 {¶ 17} Appellant-mother has not maintained steady employment. She has had various jobs during this case, but nothing long term.
 {¶ 18} Appellant-mother has been involved with the court system throughout these proceedings. She was convicted of wrongful entrustment for letting her boyfriend drive her car. She was to serve twenty-five hours of community service for that offense. *Page 6 
However when she failed to complete the work she was arrested on a bench warrant at the New Philadelphia Municipal Courthouse and served three days in the Stark County Jail. Appellant-mother also admitted that the police had been to the home of herself and the child's father for various incidents, including loud arguing between her and the father.
 {¶ 19} Appellant-mother has taken advantage of Positive Parenting at Personal Family and Counseling Services [PFCS]. However, she has never had custody of Brandon and indeed lost even supervised visitation of Brandon due to her lack of participation.
 {¶ 20} On November 29, 2007, the court filed its Judgment Entry terminating appellant-mother's parental rights, and granting permanent custody of the minor child to TCJFS.
 II. Assignments of Error {¶ 21} On appeal, mother asserts the following assignment of error:
 {¶ 22} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD COULD NOT BE PLACED WITH MOTHER IN A REASONABLE AMOUNT OF TIME, AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST."
 A. Burden Of Proof {¶ 23} "[T]he right to raise a child is an `essential' and `basic' civil right." In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, quoting Stanley v. Illinois *Page 7 
(1972), 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551. A parent's interest in the care, custody and management of his or her child is "fundamental." Id.; Santosky v. Kramer (1982), 455 U.S. 745, 753,102 S.Ct. 1388, 71 L.Ed.2d 599. The permanent termination of a parent's rights has been described as, "* * * the family law equivalent to the death penalty in a criminal case." In re Smith (1991), 77 Ohio App.3d 1,16, 601 N.E.2d 45. Therefore, parents "must be afforded every procedural and substantive protection the law allows." Id.
 {¶ 24} An award of permanent custody must be based upon clear and convincing evidence. R.C. 2151.414(B) (1). The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate ofHaynes (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.
 B. Standard of Review {¶ 25} Even under the clear and convincing standard, our review is deferential. If some competent, credible evidence going to all the essential elements of the case and supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. In re Myers III, Athens App. No. 03CA23, 2004-Ohio-657, ¶ 7, citing State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. In re Ohler, Hocking App. No. 04CA8, 2005-Ohio-1583, ¶ 15, *Page 8 
citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 II. Requirements for Permanent Custody Awards {¶ 26} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 27} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned and the parents cannot be located; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 28} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. *Page 9 2151.414(B) (1) (a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 29} A. Parental Placement within a Reasonable Time-R.C. 2151.414(B) (1) (a) and the Best Interest of the Children.
 {¶ 30} In her sole assignment of error, the appellant-mother argues that the trial court abused its discretion by finding that the child should not or could not be placed with her within a reasonable period and that the grant of permanent custody to TCJFS was in the child's best interest. We disagree.
 {¶ 31} The court must consider all relevant evidence before determining the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C.2151.414(E). The statute also indicates that if the court makes a finding under R.C. 2151.414(E) (1) — (15), the court shall determine the children cannot or should not be placed with the parent. A trial court may base its decision that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent upon the existence of any one of the R.C. 2151.414(E) factors. The existence of one factor alone will support a finding that the child cannot be placed with the parent within a reasonable time. See In re: William S.,75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738; In re: Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6, 1997 WL 701328; In re: Butcher (Apr. 10, 1991), Athens App. No. 1470, 1991 WL 62145.
 {¶ 32} R.C. 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows: *Page 10 
 {¶ 33} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 34} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 35} "***
 {¶ 36} "(16) Any other factor the court considers relevant."
 {¶ 37} R.C. 2151.414(D) requires the trial court to consider all relevant factors in determining whether the child's best interests would be served by granting the permanent custody motion. These factors include but are not limited to: (1) the *Page 11 
interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions (E) (7) to (11) apply.
 {¶ 38} In this case, the trial court made its permanent custody findings pursuant to R.C. 2151.414(B) (1) (a). The trial court found that the evidence established that Brandon could not be placed with appellant-mother within a reasonable period and should not be placed with him.
 {¶ 39} The evidence demonstrated the successful efforts appellant-mother had made in the case to regain custody of Brandon. On that point, the evidence demonstrates that any improvement the appellant-mother has made in her life is tentative and, perhaps, temporary, and that she is at risk of relapse. The trial court found that, regardless of appellant's compliance with aspects her case plan, she was still not able to be a successful parent to his children.
 {¶ 40} Appellant-mother was ordered to comply with a case plan calculated to facilitate the reunification of the family. This case plan included a psychological evaluation, a drug and alcohol assessment, individual counseling, clean drug tests, obtain and maintain employment, parenting classes and follow the recommendations of each evaluation.
 {¶ 41} Appellant-mother failed to complete counseling services and tested positive for cocaine on at least four (4) occasions. She admitted to using cocaine in June 2007. *Page 12 
 {¶ 42} Further, appellant-mother never progressed beyond supervised visits with her son, and those visits were suspended in June 2007 due to her lack of attendance.
 {¶ 43} In the case of In re: Summerfield, Stark App. No. 2005CA00139,2005-Ohio-5523, this court found where, despite marginal compliance with some aspects of the case plan, the exact problems that led to the initial removal remained in existence, a court does not err in finding the child cannot be placed with the parent within a reasonable time.
 {¶ 44} Based upon the foregoing, the Court properly found the child could not or should not be returned to the appellant-mother within a reasonable time. Despite offering numerous services, the appellant-mother was unable to mitigate the concerns that led to the child's removal.
 {¶ 45} The trial court made findings of fact regarding the child's best interest. It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In reMauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quotingIn re Awkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 46} The trial court found, "Brandon Ravenscroft has done well in his foster home, and he has been there since he was removed from his mother's care. At birth, Brandon was treated for drug withdrawal based upon his mother's use. This withdrawal process lasted a few months, but he has recovered without further complications. This family is willing to adopt Brandon if this motion is granted . . . Considering all the factors *Page 13 
listed in ORC 2151.414, the Court finds that it is in the best interest of Brandon [R.] to be placed in the Permanent Custody of the Tuscarawas County Job and Family Services."
 {¶ 47} Based on the evidence submitted at trial, the court properly determined the best interest of the children would be served by the grant of permanent custody to TCJFS.
 {¶ 48} For these reasons, we find that the trial court's determination that appellant-mother had failed to reduce the risk to the child and therefore the child could not be placed with her within a reasonable time or should not be placed with her, was not against the manifest weight or sufficiency of the evidence. We further find that the trial court's decision that permanent custody to Tuscarawas County Department of Job and Family Services was in the child's best interest was not against the manifest weight or sufficiency of the evidence.
 {¶ 49} Appellant's sole assignment of error is overruled. *Page 14 
 {¶ 50} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.
 Gwin, J., Hoffman, P.J., and Wise, J., concur. *Page 15 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant. *Page 1