[Cite as *In re C.C.*, 2020-Ohio-5138.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN RE:

    C.C.,

ADJUDGED DEPENDENT CHILD.

[DENISE C. - APPELLANT]

CASE NO. 9-20-06

**O P I N I O N**

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2018 AB 0109

Judgment Affirmed

Date of Decision: November 2, 2020

APPEARANCES:

    *Edwin M. Bibler* for Appellant

    *Nathan R. Heiser* for Appellee

Case No. 9-20-06

**SHAW, P.J.**

{¶1} Mother-appellant, Denise C. ("Denise"), brings this appeal from the January 22, 2020 judgment of the Marion County Common Pleas Court, Family Division, granting permanent custody of the minor child, C.C., to the appellee, Marion County Children's Services ("MCCS"). On appeal, Denise contends that the record does not support the trial court's finding that it was in C.C.'s best interest for MCCS to be granted permanent custody of C.C.

*Background*

{¶2} Denise is the mother of C.C. who was born in August of 2009.[1] Prior to C.C.'s birth, Denise lost custody of four of her older children. Those other children were adopted by Denise's sister.

{¶3} On April 10, 2018, a complaint was filed alleging that C.C. was a neglected and dependent child pursuant to R.C. 2151.03 and R.C. 2151.04(C) respectively. The complaint alleged that Denise "use[d] drugs in front of [C.C.] while in the car and in her work vehicle." (Doc. No. 1). In addition, it was more broadly alleged that Denise snorted "drugs" and was a "meth and crack cocaine user" who was observed using drugs on the weekend prior to the complaint being filed. (*Id.*) A GAL was appointed for C.C.

---

[1] Luke C. is the father of C.C. He was not involved in C.C.'s life. Luke did not participate in this case despite being properly notified and he did not file an appeal thus we will not further address him regarding this permanent custody proceeding.

{¶4} On June 7, 2018, C.C. was adjudicated to be a dependent child pursuant to R.C. 2151.04(C) based on Denise's stipulation and testimony provided at the adjudication hearing.

{¶5} C.C. was originally placed in the temporary custody of a couple who had previously provided "respite care for [C.C.] during a prior Children Services case in another county." (Doc. No. 56). However, due to some behavioral issues with C.C., and financial concerns, the couple decided that they could not continue caring for C.C., so C.C. was placed in the temporary custody of a second couple. Unfortunately, C.C. did not interact well with the second couple's nine other children so he was placed in the temporary custody of MCCS on September 4, 2018. Thereafter C.C. was placed in a foster home with James and Minnie M.

{¶6} A case plan was established seeking to reunite Denise with C.C. As part of the case plan, Denise was to become drug-free, to be able to consistently provide for C.C.'s well-being, and to complete mental health assessments and follow treatment recommendations.

{¶7} As the case progressed, Denise faithfully exercised supervised visitation with C.C.; however, she regularly tested positive for amphetamines and methamphetamines. In fact, it was alleged that Denise was under the influence during one of her supervised visits with C.C. and the visit was terminated. Denise was typically open and honest about the fact that she would test "dirty" for drugs.

Denise did enter an inpatient rehab facility for 28 days but when she got out she began testing positive for amphetamines and methamphetamines again.[2]

{¶8} Denise also struggled with mental health issues. She was on Social Security Disability for her mental health and her boyfriend's sister was her payee. Denise had been in a relationship with her boyfriend, Dusty, for seven or eight years. Dusty was also a drug-user and there were issues of domestic violence in the home, some of which C.C. had reported witnessing. In 2018, Denise had been diagnosed with issues such as "bipolar Type 1," social anxiety, manic depression, borderline personality, and self-mutilation. (Jan. 2, 2020, Tr. at 22). A 2019 assessment listed only anxiety, depression, emotion regulation, and trauma adjustment. (*Id.*)

{¶9} On October 7, 2019, MCCS filed a motion requesting permanent custody of C.C. At that time, C.C. had been in the temporary custody of MCCS for more than twelve of the previous twenty-two consecutive months and MCCS contended that it was in C.C.'s best interest that the agency be granted permanent custody.

{¶10} On December 12, 2019, the GAL filed a final report recommending that MCCS's motion be granted. In addition to summarizing her involvement in the case, the GAL noted that during the pendency of this case Denise had lived in at least four different residences. In the current residence an individual had recently

---

[2] There was testimony that once or twice she also tested positive for THC.

had a drug overdose. Further, the most recent residence lacked gas for a period of time.

{¶11} A hearing was held on MCCS's motion for permanent custody on December 19, 2019, and January 2, 2020. C.C.'s foster-parents provided testimony at the hearing as did an ongoing caseworker from MCCS, the GAL, and Denise. By all accounts Denise had a strong bond with C.C.; however, the trial court found that C.C. was in "desperate" need for secure placement, that Denise had "consistently" and "substantially" failed to comply with the terms and conditions of her case plan, and that she had failed repeatedly to remedy the conditions causing the removal of C.C. from her home. (Doc. No. 66). Although she did not test positive for drugs at the final hearing, she had tested positive for methamphetamines as recently as November 13, 2019.

{¶12} On January 22, 2020, the trial court filed a judgment entry determining that C.C. had been in the custody of MCCS for more than twelve consecutive months of a twenty-two month period and that it was in C.C.'s best interests that MCCS be granted permanent custody. It is from this judgment that Denise appeals, asserting the following assignment of error for our review.

**Assignment of Error**
**The Trial Court's Judgment in Granting Permanent Custody was against the Manifest Weight of the Evidence and Contrary to Law, and amounted to an abuse of discretion, as granting M.C.C.S.B.'s Motion for Permanent Custody was not in the best interest of C.C.**

{¶13} In her assignment of error, Denise argues that the trial court erred by granting permanent custody of C.C. to MCCS. Specifically, she contends that when analyzing the "best interest" factors of R.C. 2151.414(D)(1), the evidence weighed against granting MCCS permanent custody because Denise had a strong bond with C.C., and because Denise was "on the road" to obtaining permanent, suitable housing and getting sober. (Appt.'s Br. at 14).

### Relevant Authority

{¶14} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53 and 5-02-54, 2003-Ohio-1269, ¶ 6.

{¶15} "R.C. 2151.414 outlines the procedures that protect the interests of parents and children in a permanent custody proceeding." *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08 and 3-17-09, 2018-Ohio-125, ¶ 12, citing *In re*

*B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26. "When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414." *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 13, citing *In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. "R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child." *In re Y.W.*, 3d Dist. Allen No. 1-16-60, 2017-Ohio-4218, ¶ 10, citing *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10 and *In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994).

{¶16} " 'If the trial court determines that any provision enumerated in R.C. 2151.414(B)(1) applies,' it must proceed to the second prong of the test, which requires the trial court to 'determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest.' " *In re K.M.S.*, 3d Dist. Marion Nos. 9-15-37, 9-15-38 and 9-15-39, 2017-Ohio-142, ¶ 23, quoting *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 55 and citing R.C. 2151.414(B)(1). "The best interest determination is based on an analysis of R.C. 2151.414(D)." *Id.*

{¶**17**} "Under R.C. 2151.414(D)(1), the trial court is required to consider all relevant factors listed in that subdivision, as well as any other relevant factors." *Id.* at ¶ 24, citing *In re H.M.*, 3d Dist. Logan Nos. 8-13-11, 8-13-12 and 8-13-13, 2014-Ohio-755, ¶ 27. The R.C. 2151.414(D)(1) factors include:

(a) **The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**

(b) **The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**

(c) **The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;**

(d) **The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**

(e) **Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

R.C. 2151.414(D)(1).

{¶**18**} If the trial court makes the required statutory determinations, a reviewing court will not reverse a trial court's decision regarding permanent custody unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*,

98 Ohio App.3d 189, 195 (3d Dist.1994), citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985) and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.*, 2015-Ohio-2306, at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

Analysis

{¶19} At the outset, we note that Denise specifically does not dispute that C.C. had been in the temporary custody of MCCS for more than twelve consecutive months of the previous twenty-two months, thus she does not contest the trial court's finding that R.C. 2151.414(B)(1)(d) was satisfied in this matter. Even if she did, the record clearly reflects that C.C. had been in the temporary custody of MCCS for longer than twelve consecutive months by the time the permanent custody motion was filed by MCCS. Therefore, the first prong of permanent custody was met here.

{¶20} We turn then to the evidence related to the "best interest" factors pursuant to R.C. 2151.414(D)(1). The first factor, (a), considers C.C.'s relationship with his parents, relatives, and foster caregivers, etc. By all accounts, C.C. had a good relationship with his mother. Denise, the MCCS caseworker, and the GAL all testified that there was a strong bond between C.C. and Denise, which was exhibited through Denise's faithful attendance at her supervised visitation. Nevertheless,

despite the strong bond, through Denise C.C. had been exposed to drugs and domestic violence. He also purportedly saw a sex act occur in the home. Further, Denise was unable to graduate to unsupervised visitations or visitations off of agency grounds due to her consistent positive drug tests. The GAL also found it difficult to do home visits with Denise because Denise was not cooperative.

{¶21} Moreover, the testimony also indicated that C.C. had a strong bond with his foster caregivers, to the point that C.C. referred to them as "grandma" and "grandpa." C.C. was a good student, getting mostly "A" grades; however, he did exhibit some erratic behavior after having visitations with his mother wherein Denise talked about the pending permanent custody case when she was not supposed to do so. One of these incidents included C.C. breaking the collarbone of his younger foster-brother and another involved a suspension from school. C.C.'s foster-parents indicated a willingness to explore adoption if MCCS was granted permanent custody.

{¶22} As to R.C. 2151.414(D)(1)(b), which considers the child's wishes as expressed directly or through the GAL with due regard for the child's maturity, C.C. indicated his desire to be reunited with his mother. No *in camera* interview was conducted of C.C., who was ten years old at the time of the final hearing, but the GAL indicated that C.C. would have preferred reunification with his mother. Nevertheless, the GAL recommended, on C.C.'s behalf, that permanent custody be

granted to MCCS. Speaking on C.C.'s behalf, the GAL felt that although Denise loved C.C. she had "not shown that she can remain sober or maintain adequate housing for an extended period of time." (Doc. No. 56). The GAL noted that the foster parents were aware that if C.C.'s contact with his mother was severed, it would be difficult on C.C. and the foster parents were prepared to deal with the accompanying issues.

{¶23} Regarding R.C. 2151.414(D)(1)(c), C.C. had been in the temporary custody of MCCS for thirteen months when the motion for permanent custody was filed. He had been removed from her care several months prior to that. There was also an indication that C.C. had been temporarily removed from Denise's care back when he was approximately eighteen months old.

{¶24} Regarding R.C. 2151.414(D)(1)(d), it was evident from testimony and from the GAL's report that C.C. was in need of legally secure placement. The trial court characterized the need as "desperate." (Doc. No. 66). Denise went through brief periods of sobriety, including a period in rehab, but she continued to relapse with her drug of choice—methamphetamines. She also moved four times during the pendency of this case, and failed to follow treatment recommendations related to her mental health assessments. Further, Denise maintained a romantic relationship where there was ongoing drug use and domestic abuse. In fact, Dusty,

her paramour, was incarcerated at the time of the final hearing.  In addition, there was an overdose in Denise's residence less than a month before the final hearing.

{¶25} From the record it does not appear that there is anything relevant to the "best interest" analysis pursuant to R.C. 2151.414(D)(1)(e), which relates to other factors in R.C. 2151.414(E)(7) to (E)(11).  Notably, factor (E)(11) concerns whether a parent has had her rights involuntarily terminated with respect to a sibling of the child.  The record established that Denise "lost custody" of four older children and that they were adopted by a relative, but it is unclear exactly how this came about, so we will not rely on this factor.[3]

{¶26} After all of the evidence was presented, the trial court analyzed the appropriate statutory factors and found that,

> **Mother has consistently and substantially failed to comply with the terms and conditions of the Case Plan developed to provide timely reunification by her with [C.C.].  She has failed to follow treatment recommendations following her AOD and mental health assessments.  She has failed to maintain her sobriety and abstinence from illegal substances.  She has failed to maintain adequate, safe and stable housing.  She has failed to remain away from persons abusing substances and/or exhibiting criminal behaviors.  She has failed to attend parenting classes and maintain the required medication regiment [sic] for her own mental health treatment.**

---

[3] The trial court made no mention of this factor either.

(Doc. No. 66). The trial court ultimately determined by clear and convincing evidence that it was in C.C.'s best interest for MCCS to be granted permanent custody.

{¶27} The evidence supports the trial court's decision here. While there was undoubtedly a strong bond between Denise and C.C., Denise's continuous use of serious drugs, specifically methamphetamine, her decision to maintain certain problematic relationships, and her failure to completely follow through with appropriate treatments or parenting classes showed that she had chosen her lifestyle over C.C. (Tr. at 132); *See In re Brandon R.*, 5th Dist. Tuscarawas No. 2008AP030011, 2008-Ohio-3463.

{¶28} Although it did appear that Denise was sober at the time of the final hearing, it seems that she only attempted to make a legitimate effort at following through with the case plan at the eleventh hour when she was seriously threatened with the loss of C.C. Her sobriety at that point had lasted, at most, just over a month with her last positive drug test being November 13, 2019. Notably, at the final hearing, the trial court asked Denise how long she had been sober and she testified that she was unsure. The trial court indicated its skepticism of her sobriety because usually when people got sober they were aware of exactly how many days it had been since they had been under the influence.

**{¶29}** In sum, Denise's poor judgment was shown throughout this case where she continuously tested positive for methamphetamines, she came to a visitation under the influence, she once told C.C. that his foster parents did not love him and were only in it for the money, and she maintained a house where an overdose occurred in the midst of the permanent custody proceeding. *See In re T.B.*, 11th Dist. Lake No. 2008-L-055, 2008-Ohio-4415. After reviewing the evidence presented, the relevant statutory factors, and the trial court's analysis, we cannot find that the trial court erred by finding by clear and convincing evidence that it was in C.C.'s best interest for MCCS to be granted permanent custody. Therefore Denise's assignment of error is overruled.

*Conclusion*

**{¶30}** For the foregoing reasons Denise's assignment of error is overruled and the judgment of the Marion County Common Pleas Court, Family Division, is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**